```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAR 2 0 2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

JAMES CHARLESTON,

                  Petitioner,

-v-

P. GONYEA, Superintendent, Mohawk
Correctional Facility, State of New York,
                  Respondent.

------------------------------------------------------------- X

11 Civ. 5694 (KBF)

MEMORANDUM
DECISION & ORDER

KATHERINE B. FORREST, District Judge:

On July 29, 2011, James Charleston, pro se, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2554. Charleston seeks relief from his June 8, 2009, conviction following a guilty plea in Supreme Court, New York County, for Attempted Criminal Sale of a Controlled Substance in the Third Degree. He was sentenced to four years in prison and one and one-half years of post-release supervision.

At his sentencing, Charleston's attorney "announced" that he wished to withdraw his plea; the court denied that motion. In December 2010, Charleston appealed his conviction; in October 2011, after two substitutions of counsel and other procedural delays in which Charleston himself played an active role, the First Department unanimously affirmed his conviction. Leave to appeal to the New York Court of Appeals was denied. People v. Charleston, 88 A.D.3d 549, leave denied, 19 N.Y.3d 863 (2012).

1

Charleston brought his pro se habeas petition while still in custody. He was released and commenced his period of supervision on April 16, 2012; that period terminates on October 16, 2013.[1] In his petition, he asserts four grounds as bases for relief: (1) the state court's failure to hold a hearing on his post-conviction claim of innocence violated his due process rights; (2) ineffective assistance of counsel; (3) the government's failure to produce arrest records of another individual violated Brady v. Maryland, 373 U.S. 83 (1963); and (4) the delay in resolving his direct appeal was excessive and violated his due process rights.

## FACTUAL BACKGROUND

On September 20, 2008, Charleston was arrested for selling crack cocaine to an undercover police officer on Seventh Avenue between 145th and 146th Streets in Manhattan, close to a school. After the undercover officer purchased the drugs from Charleston, he transmitted detailed descriptions of Charleston to a nearby arrest team. When the team arrived on the scene, the undercover officer identified Charleston, who was then arrested. Officers also arrested two other individuals at the scene, Rhonda McCrimmons and Bruce Paul. Upon searching Charleston, the team discovered the pre-recorded buy money it had given the undercover officer in order to purchase the drugs.

On September 30, 2008, a New York County grand jury indicted Charleston on charges of (1) Criminal Sale of a Controlled Substance in the Third Degree; (2)

---

[1] See Letter from Leilani Rodriguez to the Court, dated March 18, 2013. (ECF No. 21).

2

Criminal Possession of a Controlled Substance in the Third Degree; and (3) Criminal Sale of a Controlled Substance in or near School Grounds.

On April 28, 2009, a state court judge denied Charleston's motion to suppress both the pre-recorded buy money and the undercover officer's post-arrest identification. In June 2009, Charleston pled guilty to Attempted Criminal Sale of a Controlled Substance in the Third Degree. In his allocution, he waived his rights to a trial and not to incriminate himself, and admitted his guilt. He was subsequently sentenced to four years imprisonment and one and one-half years of post-release supervision.

According to Charleston, he had previously provided his attorney with a pro se motion to withdraw his plea on the basis of his innocence – and that such motion had not been submitted to the trial court. However, at Charleston's sentencing, his attorney informed the court that Charleston wished to withdraw his guilty plea. No basis for the motion was provided; when the Court asked Charleston whether he wanted to add anything to the record, he declined. The court denied the motion.

On December 15, 2009, Charleston, acting pro se, moved to vacate the judgment of conviction, claiming ineffective assistance of counsel. He also requested a hearing on the issue of his actual innocence on the basis that one of the two other individuals arrested on the same day, Bruce Paul, had been the seller. The court denied Charleston's motion.

In connection with its decision, the trial court had conducted an in camera review of Paul's arrest records and had also reviewed photographs of the two men.

3

The court noted that Charleston's admission of guilt at the plea allocution along with the statement of another individual arrested with Charleston, Rhonda McCrimmon, that she had worked with Charleston to sell crack cocaine to the undercover officer, provided strong evidence of Charleston's guilt. The court also noted that based upon its review of the photographs, Charleston and Paul do not look alike. The court found that contrary to his assertion of ineffective assistance of counsel, Charleston's lawyer had ably represented him at the suppression hearing and then obtained a beneficial plea deal for him. Charleston moved the Appellate Division for leave to appeal this decision but on September 7, 2010, that application was denied.

In December 2010, Charleston appealed his conviction to the First Department. His appeal was based on three arguments: (1) the trial court erred in denying his motion to withdraw his guilty plea; (2) the government violated People v. Rosario, 9 N.Y.2d 286 (1961), by failing to turn over the police paperwork relating to Paul; and (3) his sentence was excessive. On October 20, 2011, the First Department unanimously affirmed his conviction; on May 24, 2012, the New York Court of Appeals denied his application for leave for to appeal. Charleston filed the instant petition pro se on August 4, 2011 (it is dated July 29, 2011); it became fully briefed on July 27, 2012.[2]

---

[2] The petition was originally dismissed as jurisdictionally defective because petitioner's direct appeals were then still pending. (ECF No. 5.) Petitioner appealed the dismissal to the Second Circuit; the dismissal was vacated and remanded back to this Court for decision. (ECF No. 7.) This petition is timely; it must be filed within one year of petitioner's state court conviction becoming final; and it was.

4

## DISCUSSION

### A. Standard of Review

To prevail on a petition for habeas corpus, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), requires that a petitioner demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2). This is a high burden and a reviewing court must give a state court decision due deference. See Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011) ("If this standard is difficult to meet, that is because it was meant to be."); Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (noting that section 2254's "highly deferential" standard "demands that state-court decisions be given the benefit of the doubt").

### B. Failure to Hold a Post-Conviction Evidentiary Hearing

Petitioner's first argument for relief is based on the trial court's failure to hold a post-conviction hearing on his assertion of "actual innocence." However, no constitutional provision requires that state courts grant such post-conviction review, Pennsylvania v. Finley, 481 U.S. 551, 557 (1987), and most federal courts have rejected due process claims arising out of the conduct of post-conviction proceedings. See, e.g., Jones v. Duncan, 162 F. Supp. 2d 204, 217 (S.D.N.Y. 2001) (stating that "federal habeas review is unavailable to redress alleged procedural errors in state post-conviction proceedings") (citing Franza v. Stinson, 58 F. Supp. 2d 124, 151 (S.D.N.Y. 1999)).

Although the Second Circuit has not spoken directly on this issue, district courts within the circuit have adopted the rule articulated in Jones. See, e.g., Word v. Lord, 04 Civ. 328, 2009 WL 4790222, at *6 (S.D.N.Y. Dec. 11, 2009) (collecting cases). This Court adopts the rationale set forth in Jones and finds that the state court's refusal to hold an evidentiary hearing on Charleston's motion does not give rise to habeas relief.

C. Ineffective Assistance of Counsel

To support a claim of ineffective assistance of counsel, Charleston must satisfy two inquiries: (1) that his attorney provided deficient representation, and (2) even if that occurred, that he was actually prejudiced. Strickland v. Washington, 466 U.S. 681, 687-88 (1984).

Under the first Strickland inquiry, counsel's conduct must have "so undermined the proper functioning of the adversarial process" that the process cannot be relied on to produce a just result. Id. at 686. The law, however, provides for a strong presumption that counsel has provided adequate assistance and utilized reasonable professional judgment. Id. at 689. The second Strickland inquiry only needs to follow if a court has determined that there has in fact been a deficiency in representation. If such a determination has not been made, the court need go no further. However, even assuming deficient assistance, a petitioner must prove that but for the deficient representation, the result of the proceeding would have been different. Id.

6

In addition to the Strickland test, a reviewing court is also required to ask whether the allegedly deficient legal representation occurred before or after entry of a guilty plea. Once a defendant has entered a guilty plea, and admitted his guilt, he stands in a different position before the court: "[a] guilty plea represents a break in the chain of events which has preceded it in the criminal process." Tollet v. Henderson, 411 U.S. 258, 267 (1973). Having admitted his guilt, a defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id. (emphasis added.)

Here, Charleston raises six separate bases in support of his ineffective assistance of counsel claim: (1) failure to investigate surveillance tapes that would allegedly have exonerated him; (2) failure to move to dismiss the indictment as jurisdictionally defective where it allegedly omitted elements of the crime and allegedly accused Charleston of a crime for which he was not arrested; (3) failure to impeach the sole prosecution witness at the suppression with prior statements; (4) failure to move to dismiss the indictment based on lack of eye witness or physical evidence; (5) failure to object or make a record with respect to allegedly false testimony by a prosecution witness; and (6) refusal to make a motion to withdraw his guilty plea.[3]

Of Charleston's six arguments in support of his claim of ineffective assistance of counsel, five occurred prior to the plea, when petitioner's plea "broke the chain of

---

[3] Petitioner's Affidavit in Support lists eight bases for ineffective of counsel, however two of them relate to alleged misconduct by the appellate court (failure to timely decide his appeal in violation of his due process rights), and the prosecution's suppression of Paul's arrest paperwork that petitioner asserts would have been exculpatory. (ECF No. 1 ¶ 8.)

7

events". Bases (1) – (5) as set forth above cannot form the basis for habeas relief in the absence of a determination that it was error not to allow withdrawal of the plea itself. See, e.g., United States v. Coffin, 76 F.3d 494 (2d Cir. 1996). As set forth below, this Court does not so find; and these five bases are therefore irrelevant on this petition.

Charleston's only remaining basis for his ineffective assistance of counsel claim was that his attorney failed to move to withdraw Charleston's guilty plea at his sentencing hearing. Because such a motion was in fact made, this argument immediately fails.

The recitation of facts above demonstrates that the issue of Charleston's desire to withdraw his guilty plea was placed before the trial court; the court even asked Charleston if he wanted to address this issue, but Charleston declined to do so. The very issue petitioner therefore claims was not raised, was – this eliminates the sole remaining basis for his ineffective assistance claim. That Charleston may have himself previously drafted a pro se motion to withdraw the plea, and that this pro se motion was not submitted to the court is irrelevant. The fact remains that a motion was made – at his sentencing Charleston's attorney informed the court that he wanted to withdraw his plea. That was sufficient to raise the issue.

D. The Brady and Delay Claims

In his petition, Charleston also asserts that his constitutional rights were violated when certain arrest materials relating to Paul were not provided to him, and because of how long his appeal took.

There is no doubt or dispute that the Due Process clause of the Constitution requires that the prosecution provide a criminal defendant with any favorable evidence in its possession that is material to issues of guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963). Material evidence is evidence that, if disclosed, would have created a reasonable probability that the result of the proceeding in question would have been different. Kyles v. Whitley, 514 U.S. 419, 433-34 (1995). A Brady violation requires that a court determine that three elements have been met: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) such evidence must have been suppressed by the government; and (3) prejudice must have ensued. Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Here, petitioner's claim fails on the first factor. The trial court reviewed the very information that petitioner here claims would have been exculpatory – and found that it was not. That determination eliminates any basis for a Brady violation. See United States v. Yousef, 327 F.3d 56 (2d Cir. 2003) (finding after in camera review that sealed materials did not contain exculpatory information that would support a Brady claim). The trial court determined that Paul's arrest papers were not exculpatory as to petitioner. Furthermore, after examining pictures of the

9

two men, the court determined that they looked nothing alike, thereby undermining a claim of mistaken identity in the arrest.

Petitioner's claim of undue delay is also without merit. It is certainly true that once a state grants a defendant in a criminal case the right to appeal, due process requires that the appeal be heard promptly. Elcock v. Henderson, 947 F.2d 1004, 1007 (2d Cir. 1991) (quoting Mathis v. Hood, 937 F.2d 790, 791 (2d Cir. 1990)). To determine whether any delay has been excessive, the court examines four factors: (1) was the delay in fact excessive; (2) if so, is there an acceptable excuse for such delay; (3) did petitioner assert his right; and (4) did prejudice ensue. See Barker v. Wingo, 407 U.S. 514, 530 (1972); Elcock, 947 F.2d at 1007. [4]

While the Second Circuit has been critical of long appellate delays, see Muwwakkil v. Hoke, 968 F.2d 284 (2d Cir. 1992) (finding a thirteen-year delay excessive); Cody v. Henderson, 936 F.2d 715 (2d Cir. 1992) (finding a ten-year delay excessive), no such delay occurred here. Charleston's entire appellate process was completed in less than three years – a time span that does not compare to the above cases and cannot give rise to a constitutional violation. In fact, delays longer than Charleston's have been found not to be excessive. See Vazquez v. Bennett, 00 Civ. 2070, 2002 WL 619282 (S.D.N.Y. April 17, 2002) (finding that a four-year delay in deciding petitioner's direct appeal did not violate his due process rights). This finding alone is fatal to petitioner's delay-based due process claim.

---

[4] It is clear that petitioner did pursue his appeal; the third Barker factor has been met.

10

In addition, however, the majority of the delay was attributable to choices made by Charleston himself. Cf. Barker, 407 U.S. at 529 ("We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect . . . ."). Charleston replaced his appellate counsel. His direct appeal was decided only ten months after his new counsel submitted a brief on his behalf.

Finally, Charleston was not prejudiced by the delay. As the Second Circuit has recognized, prejudice does not ensue if the appeal would have had the same result absent the delay. Diaz v. Henderson, 905 F. 2d 652, 653 (2d Cir. 1990) (finding that prejudice did not occur because defendant "could not conscientiously claim that appeal would have had a different result absent the delay."). Here, the Appellate Division found Charleston's claims meritless and affirmed his conviction. Charleston puts forth no evidence that the delay impacted the First Department's decision or that, absent the delay, the First Department would have decided his appeal differently. Thus, the appellate delay did not affect the decision nor did it prejudice Charleston's appeal. Lastly, the delay did not prevent Charleston from any other post-conviction relief proceedings, as evidenced by the current petition.

CONCLUSION

For all of the reasons set forth above, the petition for habeas corpus is denied.

In addition, the Court declines to issue a certificate of appealability. Charleston has not made a substantial showing of a denial of a federal right pursuant to 28 U.S.C. § 2253(c), and appellate review is therefore unwarranted. Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005).

The Court also finds, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445 (1962).

SO ORDERED:

Dated: New York, New York
       March 20, 2013

*/s/ K. B. Forrest*

Katherine B. Forrest
United States District Judge

Copy to:

James Charleston
Mohawk Correctional Facility
6100 School Road
P.O. Box 8451
Rome, NY 13442